## DAVIS v. BORDER MORTGAGE CO. et al.*
### (No. 1846.)

(Court of Civil Appeals of Texas. El Paso. March 4, 1926. Rehearing Denied March 18, 1926.)

**1. Adverse possession ⊕114(1) — Evidence held not to show title under 10-year statute of limitation (Rev. St. 1911, art. 5701).**

Evidence held insufficient to show that ancestor of defendants acquired title to land in question prior to his death in January, 1877, through 10-year statute of limitation, in view of Rev. St. 1911, art. 5701, suspending laws of limitation in civil suits from January 28, 1861, to March 30, 1870.

**2. Adverse possession ⊕115(1) — Presumption of grant to ancestor of claimants of land held one of fact, and jury was to determine effect of evidence in support thereof.**

Presumption of grant to ancestor of defendants, based on fact that he had lived on land many years, was one of fact, and jury was to determine effect of evidence in support thereof.

**3. Ejectment ⊕9(3).**

Claimant, to recover land, must do so on strength of his own title and not on the weakness of others.

**4. Evidence ⊕31—Deed from town incorporated under act which did not authorize courts to take judicial notice thereof, and act not being offered in evidence, held ineffective (6 Gammel's Laws, p. 1221; 10 Gammel's Laws, pp. 233, 252; 9 Gammel's Laws, p. 1371; Complete Tex. St. 1920, or Vernon's Ann. Civ. St. Supp. 1918, arts. 5393a and 5393b).**

Deed from town incorporated under 6 Gammel's Laws, p. 1221, abolished by 10 Gammel's Laws, p. 252, *held* ineffective, where incorporating act was not offered in evidence, and it did not authorize courts to take judicial notice thereof; 9 Gammel's Laws, p. 1371, and 10 Gammel's Laws, p. 233, not being relied on, and Complete Tex. St. 1920, or Vernon's Ann. Civ. St. Supp. 1918, arts. 5393d and 5393b, being unavailable.

**5. Evidence ⊕31.**

Courts do not take judicial notice of special laws incorporating municipalities unless laws authorize taking judicial notice.

**6. Evidence ⊕96(1)—Cross-petitioners in suit to foreclose mortgage, seeking affirmative relief based on title in themselves, had burden of establishing such title.**

In suit to foreclose mortgage, defendants, who by cross-action set up title in themselves and asked for judgment, became plaintiffs in cross-action, and had burden of establishing their title.

**7. Appeal and error ⊕1119—Modification of erroneous feature in judgment on cross-action against plaintiff who did not appeal cannot be had on appeal.**

In action on notes and to foreclose mortgage securing them, where plaintiff did not appeal and acquiesced in judgment against it on cross-action, erroneous feature of such judgment cannot be modified on appeal.

Error from District Court, El Paso County; P. R. Price, Judge.

Suit by the Border Mortgage Company against H. E. Christie and others, in which Britton Davis intervenes. To review an adverse judgment, intervener brings error. Modified and affirmed.

Waters Davis, of El Paso, for plaintiff in error.

Whitaker & Peticolas and S. P. Weisiger, all of El Paso, for defendants in error.

HIGGINS, J. This is a foreclosure suit instituted by the Border Mortgage Company, in which the plaintiff in error, Davis, intervened.

Nacasio Alarcon died January 10, 1877, and his wife, Refugio, died December 14, 1922. They died intestate, and had five sons, Julian, Jose, Faustino, Patricio, and Lorenzo, and one daughter, Delfina, who married Severa Montes. Jose, Faustino, Patricio, and Lorenzo died leaving children, who with Julian Alarcon and Mrs. Montes, are the heirs at law of Nacasio and Refugio Alarcon. Mrs. Montes and the surviving children of Jose, Faustino, Patricio, and Lorenzo Alarcon are referred to in this opinion as the defendants in error.

On March 8, 1853, there was a patent issued to "the inhabitants of the town of Presidio de San Elizario, their heirs or assigns forever. Four leagues, more or less, of land situated and described as follows: In El Paso county, in accordance with the provisions of an act 'for the relief of the inhabitants of Presidio de San Elizario, in El Paso county,' approved February 5th, 1853, beginning on the Rio Grande" (here follows description of the land).

By deed dated July 20, 1882, signed, "G. N. Garcia, 2nd Mayor of San Elizario," 36 acres of the San Elizario grant was conveyed to

Refujio (Refugio) Alarcon. Omitting description and the tenendum clause, the deed reads:

"State of Texas, El Paso County.

"Know all men by these presents: That whereas, at a regular meeting of the town council of the corporation of the town of San Elizario, Texas, held at San Alizario, on the 1st day of July, A. D. 1882, at which meeting, I certify that a quorum of said council was present, Dona Refujio Alarcon, whom I certify to be an inhabitant of the town of San Elizario, did present a petition to said council praying for a deed of relinquishment from said corporation to said petitioner for the hereinafter described tract or tracts of land, and it appearing to the satisfaction of said court, that the said Refujio Alarcon, or his vendors have long used, cultivated, possessed and made valuable improvements thereon in good faith; it was among other things ordered and adjudged that the prayer in said petition be granted.

"Now, therefore, know all men, that I, G. N. Garcio, second mayor of the town of San Elizario, Texas, by virtue of the power and authority in me vested as such mayor aforesaid, in consideration of one dollar to me in hand paid by Refujio Alarcon and for other good and valuable considerations, the receipt whereof is hereby acknowledged, and by virtue of the ordinance aforesaid, have granted, sold and conveyed and released. And by these presents do grant, sell, convey and release unto Refujio Alarcon all the right, title, interest, claim or demand whatsoever, that the said corporation may have in, through or by a certain grant, by the King of Spain in the year A. D. 1690, and a certain grant from the Legislature of the state of Texas, made and approved on the 5th day of February, A. D. 1853, and evidenced by a certain patent issued to the inhabitants of San Elizario, by P. H. Bell, Governor of the state of Texas, on the 8th day of March, A. D. 1853, to the following described tracts of land lying within the corporate limits of San Elizario, Texas, according to the map of San Elizario, as compiled by A. Q. Wingo, surveyor for the corporation of San Elizario, Texas, and particularly described as follows:" * * *

By deed dated October 15, 1914, Refugio Alarcon conveyed to Julian Alarcon, 30½ acres of the land conveyed to her as aforesaid.

On January 29, 1924, Julian Alarcon conveyed the 30½-acre tract to H. E. Christie in trust to secure the payment of two notes for $1,000 each, executed by Julian Alarcon to the Border Mortgage Company. On February 25, 1924, Julian Alarcon conveyed the land in trust to Waters Davis to secure T. C. Turk in the payment of a note for $1,000 given by Julian Alarcon to Turk.

Default having been made in the payment of this last-mentioned note, the land was sold by the trustee to T. C. Turk and conveyed by deed dated May 8, 1924. T. C. Turk conveyed the land to T. P. Turk, who, in turn, conveyed to Britton Davis by deed dated March 4, 1925.

The present suit was instituted by the Border Mortgage Company to recover upon its notes and foreclose the deed of trust given to secure their payment. The original petition is not in the record, but from the entire record it is evident that the original defendants were T. P. Turk, who answered by a general demurrer and general denial, the trustee, Christie, who filed a disclaimer, Julian Alarcon, and the defendants in error.

On March 19, 1925, Britton Davis intervened in the suit, setting up that subsequent to the filing of the suit he had acquired the right and title of T. P. Turk, the execution of the note and deed of trust by Julian Alarcon in favor of T. C. Turk, the trustees' sale thereunder and conveyance to T. C. Turk, the conveyance by the latter to T. P. Turk, and the conveyance by T. P. Turk to intervener, and also adopted the pleadings of the Border Mortgage Company. He prayed that the court adjudicate his title to the property and render such judgment for his protection as the facts may warrant; that he be permitted to discharge the plaintiff's prior lien, and he be decreed title free of the claims of the other parties to the suit, and for writ of possession against them.

The amended petition of the Border Mortgage Company, filed April 7, 1925, joined Christie, T. P. Turk, Britton Davis, and the heirs of Nacasio and Refugio Alarcon as parties defendant. The suit against Julian Alarcon was to recover upon the notes held by the plaintiff, and foreclosure of the deed of trust was sought against all defendants. It was alleged by the plaintiff that the defendants in error "have no real right, title, and interest in the property conveyed by said deed of trust, but are claiming to have some kind of an interest therein adverse to T. P. Turk, and therefore they are made parties defendant that plaintiff's foreclosure hereinafter asked may be effective against all persons."

Julian Alarcon answered by general demurrer and general denial. The defendants in error filed a lengthy answer to the plaintiff's petition and the intervention of Davis; they also set up a cross-action against the plaintiff and intervener, pleading their title specially. They claimed an undivided five-twelfth interest in the land as the heirs of Nacasio Alarcon. Their contention is that Nacasio Alarcon acquired title to the land prior to his death in 1877, and as his heirs at law they have inherited a five-twelfth interest. Judgment was rendered upon a verdict returned in response to a peremptory instruction.

In brief the judgment is as follows: In favor of the plaintiff, against Julian Alarcon, upon the notes, and judgment of foreclosure against all parties upon an undivided seven-twelfth interest in the land, which was ordered sold and the proceeds applied to the payment of the judgment in plaintiff's favor upon the notes, and the balance, if any, paid to Davis; that the plaintiff's deed of trust is a cloud upon the title of defendants in error to an undivided five-twelfth interest in the

land, and as to said interest said deed of trust was adjudged to be void and of no effect; and that defendants in error recover of plaintiff and Davis the title to an undivided five-twelfth interest in the land; in favor of Davis for an undivided seven-twelfth interest in the land, subject to the foreclosure in favor of the plaintiff.

From this judgment Davis prosecutes this writ of error. The issues presented by the appeal concern only Davis and the defendants in error, Mrs. Montes and the heirs of Jose, Faustino, Patricio, and Lorenzo Alarcon. All the other parties acquiesce in the judgment of the court below.

Julian Alarcon is a bachelor and has always lived upon the land in the original home of his father and mother. He seems to have become the head of the family after his father's death, and as soon as he became old enough. Mrs. Refugio Alarcon lived upon the land with her son Julian until her death in 1922. Some of the deceased children lived upon the land until their death. The grandchildren, or most of them, were born upon the land, and some of them lived upon it until they reached maturity, or married. One of the grandchildren has lived there since he was two years old, and is now living there with his family. The property, after the death of Nacasio, seems to have been treated and regarded by the family as community, in which all of the children and grandchildren had an interest. Julian Alarcon testified that when he gave the deed of trust to T. C. Turk—

"I told him that I did not own all of the land, that other persons owned part of it [this testimony is limited to the purpose of showing notice to Mr. Turk]. T. C. Turk prepared this instrument himself. * * * I told Mr. Turk that other people had an interest in the property, but I didn't tell the Border Mortgage Company or Mr. Christie. * * * None of the heirs, other than my mother, have relinquished or sold their interest in this tract of land since my father's death."

It clearly appears Julian Alarcon recognized that defendants in error had an interest in the land.

The plaintiff in error contends that the patent from the state of Texas, the conveyance from the town of San Elizario to Refugio Alarcon, and the other links in his chain of title, as shown above, invested him with the record title to the land, for which reason he is entitled to recover the five-twelfth interest adjudged to the defendants in error.

The defendants in error contend:

First. That under the evidence it was shown that Nacasio Alarcon acquired title to the land prior to his death in 1877 under the 10-year statute of limitation.

Second. Under the evidence a grant of the land to Nacasio Alarcon prior to his death will be presumed.

Third. That it was incumbent upon the plaintiff in error to establish his title to the land, and this he failed to do.

In the state of the evidence the action of the court in giving the peremptory instruction cannot be sustained upon the first and second contentions of defendants in error.

[1] The evidence discloses without contradiction that for many years prior to his death in January, 1877, Nacasio Alarcon resided upon the land with his wife and children. However, the laws of limitation in civil suits in this state were suspended, commencing January 28, 1861, and ending March 30, 1870. Art. 5701, R. S. 1911. The testimony of all of the witnesses, except Jesus Montes, as to the occupancy of the land by Nacasio Alarcon, did not relate to the period antedating January 28, 1861. Their memory did not extend that far back. They simply testify to an occupancy and use, beginning some time during the period of suspension and continuing to his death. The witness Jesus Montes testified that all of the children were born on the land, and this, if true, and according to the age of some of the children, would have fixed the beginning of occupancy by Nacasio Alarcon at a date prior to January 28, 1861, and remote sufficient to make ten years when added to the period of occupancy between March 30, 1870, and January 10, 1877. But according to the age of this witness and the age from which he says he can remember, it appears that he could not have known whether all the children were born there or not. His earliest recollection could not have extended prior to some time in 1858. Alarcon's occupancy must have begun in 1857 in order to complete the ten years, exclusive of the time during which the statutes of limitation were suspended. The testimony of this witness is therefore too inconclusive to support the peremptory instruction upon the theory of title by limitation.

[2] As to the presumption of a grant to Nacasio Alarcon prior to his death, such presumption, if warranted by the evidence, was one of fact, and it is for the jury to determine the effect of the evidence in support of the same. Herndon v. Vick, 35 S. W. 141, 89 Tex. 469; Masterson v. Harrington (Tex. Civ. App.) 145 S. W. 626.

[3] We think, however, that the plaintiff in error failed to show himself entitled to any relief against the defendants in error. The contest between the intervener and them was over the title to the land. He intervened in the suit, sought affirmative relief against the defendants in error, and contends that he has acquired title to the land subject only to the prior lien of the Border Mortgage Company. He was in the attitude of a plaintiff against defendants in error. To recover he must do so upon the strength of his own title. The weakness of the title of the defendants in error will avail him nothing.

[4] One of the links in his chain of title is the deed from the corporation of the town of

San Elizario. San Elizario was incorporated by a special act of the Legislature in 1871, and its council granted limited power to convey real estate belonging to the town. 6 Gammel's Laws, 1221. The corporation was abolished by a special act in 1891. 10 Gammel's Laws, 252. The patent of March 8, 1853, and the act by which it was issued, vested the title of the state of Texas to the land granted in "the inhabitants." Reese v. Cobb, 150 S. W. 887, 105 Tex. 399. The question which immediately arises is that no conveyance is shown from the original grantees to the town of San Elizario so as to authorize the town incorporated in 1871 to convey land granted to such inhabitants, but this phase of the title is not discussed in the briefs, and we need not rule upon the same. We may assume for the purpose of this case that the incorporated town had such authority, provided there was such a corporate body.

[5] It is well settled the courts do not take judicial notice of special laws incorporating municipalities unless the law contains a provision authorizing the courts to take judicial notice thereof as a general law. City of Paris v. Tucker, 104 S. W. 1046, 101 Tex. 99. The act incorporating the town of San Elizario contains no such provision, and the act was not offered in evidence. In this condition of the evidence the deed from the town corporation of San Elizario is ineffective for any purpose. Upon the record such corporation appears to be an entire stranger to the title.

There are two special laws validating conveyances by the town of San Elizario (9 Gammel's Laws, 1371; 10 Gammel's Laws, 233), but they were not offered in evidence, nor does the plaintiff in error rely upon them. He invokes a general law of the Thirty-Fourth Legislature, First Called Session, chapter 12 (arts. 5393a and 5393b, Complete Texas Statutes 1920, or Vernon's Ann. Civ. St. Supp. 1918). This is a validating act, and plaintiff in error asserts that under this act the defendants in error cannot "dispute the title of Refugio Alarcon, plaintiff in error's intermediate vendor." The act in question contains this provision:

"No claimant to the title of land shall be entitled to claim the benefit of the provisions of this act unless such claimant shall have had actual, visible possession of such land so claimed by him, controlling the same under fence or actually cultivating the same for a period of one year next immediately preceding the assertion of such right. * * *"

There is nothing in the record to show that the intervener was within the terms of this provision, and therefore he cannot claim the benefit of the act.

For the reasons stated, the plaintiff in error failed to establish title to the five-twelfth interest claimed by the defendants in error.

[6] The defendants in error by their cross-action set up title in themselves to such interest, and asked for judgment therefor against the Border Mortgage Company and intervener. They became plaintiffs in the cross-action, and the burden rested upon them of establishing their title in order to entitle them to the affirmative relief sought. As we have already seen, they relied upon a limitation title vested in Nacasio Alarcon or the presumption of a grant to him. As has been shown, the peremptory charge to find in their favor cannot be sustained upon the theory of title so vested in their ancestor. They therefore failed to discharge the burden resting upon them under their cross-action. Their prayer for affirmative relief should have been denied.

[7] This is a matter which can be here corrected. The Border Mortgage Company has not appealed and has acquiesced in the judgment. There is therefore no authority for any modification of the erroneous feature of the judgment against it upon the cross-action.

The judgment of the court below, as between the intervener, Davis, and the defendants in error, will be modified as follows:

(1) By expressly declaring that the intervener take nothing against the defendants in error as to the undivided five-twelfth interest in the land claimed by them.

This express provision is perhaps not necessary, but advisable so as to prevent any uncertainty as to the effect of the judgment as a whole.

(2) By eliminating that portion of the judgment wherein, upon their cross-action, the defendants in error recovered of the intervener title to an undivided five-twelfth interest in the land, and adjudging that they take nothing by their cross-action against the intervener.

In no other respect is the judgment of the lower court disturbed.

Modified and affirmed.