James POTTS, Sr., et al., Appellants,

v.

Ammy Addie POTTS, Appellee.

No. 15950.

Court of Civil Appeals of Texas.

Dallas.

Feb. 16, 1962.

**625**

Helen M. Viglini, Dallas, for appellants.

David H. Brown, Sherman, for appellee.

DIXON, Chief Justice.

Appellants James Potts, Sr. and Pearlie Potts, children of Ed Potts and his first wife Virgie Potts, brought suit in trespass to try title against appellee Ammy Addie Potts, second wife and surviving widow of Ed Potts, and stepmother of appellants, for title to a house and lot in the City of Sherman, Texas.

Appellants' claim of title is not based on a deed. They claim that their parents acquired title by ten years' limitation as provided in Arts. 5510 and 5513 Vernon's Ann. C.S. and that they as heirs succeeded to the title. They do not ask for possession. They concede that appellee Addie Potts, as surviving widow of Ed Potts, has a right to live on the property during her lifetime.

Appellee Ammy Addie Potts, hereinafter called Addie Potts, filed a plea of not guilty, and in addition defensively pled the three, five and ten year statutes of limitations. She did not ask for affirmative relief.

After a trial before the court without a jury, judgment was rendered in favor of Addie Potts that appellants take nothing by their suit.

### FACTS

Some of the facts are undisputed. In 1918 Ed Potts and Virgie Potts, husband and wife, entered into possession of the property. There is no conveyance of record and no showing of any unrecorded conveyance in their favor. They entered into possession by virtue of a purchase contract entered into with Mrs. M. E. Brannon, owner of the record title.

Ed Potts and Virgie Potts lived on the property until Virgie Potts died intestate on

June 1, 1941. Ed Potts continued to live there until he married Addie Potts on December 5, 1942. They continued to live on the property until Ed Potts died intestate on March 22, 1949. Appellee Addie Potts thereafter continued to live on the premises until the date of trial.

The records of the tax assessor show that the property was assessed in the name of Ed Potts for the years 1918 through 1949, though there is no showing that the property was actually rendered by Ed Potts, or that Ed Potts ever paid any taxes thereon. The records do show that on November 30, 1953 Addie Potts, appellee, paid delinquent taxes, penalty and interest for the years 1936 and 1937; that on March 25, 1956 she made a similar payment for the year 1923; that on July 21, 1956 she made another payment for the years 1924, 1925 and 1927; and that on November 30, 1956 she made still another payment covering the years 1939 to 1946 inclusive.

On February 11, 1927 Ed Potts and Virgie Potts signed a paving contract as owners of the property.

For several years prior to her death in August 1929, Mrs. M. E. Brannon, accompanied by her son J. C. Brannon and his wife, made frequent trips to the Potts home to collect installment payments on the purchase price. After the death of Mrs. M. E. Brannon, her son J. C. Brannon, acting for himself and other heirs, continued for several years to collect installment payments from the Potts.

At some undetermined time Ed Potts refused to make further payments because the City of Sherman claimed a portion of the land for street purposes. More than a year before the death of Ed Potts, J. C. Brannon declared the purchase contract forfeited and demanded possession of the premises.

A new contract was then entered into, in connection with which Addie Potts made a down payment of $50 out of her separate funds. She continued to make payments on such contract out of her separate funds

until the death of Ed Potts on March 22, 1949.

On March 30, 1949, Addie Potts made a final payment of $797.77 out of her separate funds, and received a warranty deed from J. C. Brannon. This deed by its express terms conveys the "undivided right, title and interest of every kind and character" of J. C. Brannon in the property in controversy. The grantee named in the deed is "Ammie Addie Potts, a feme sole". This deed was filed for record April 3, 1949.

Since March 30, 1949 Addie Potts has occupied the premises as her home, paying taxes and making valuable improvements on the premises.

The trial court made findings of fact which have support in the evidence. After J. C. Brannon demanded possession of the property following the forfeiture of the purchase contract because of Ed Potts' refusal to make further payments, Addie Potts redeemed the property and in her own behalf entered into a new and separate purchase contract with J. C. Brannon, acting on behalf of himself and other heirs. The first payment under the new contract and all subsequent payments until the death of Ed Potts were made by Addie Potts out of her separate funds. All of this was done with the consent, knowledge and acquiescence of Ed Potts.

On or about April 2, 1949 appellant Pearlie Potts had actual notice that Addie Potts was asserting a claim of exclusive ownership of the property as opposed to her homestead rights as surviving widow of Ed Potts. On or prior to February 23, 1950, both James Potts, Sr. and Pearlie Potts had notice of such claim in behalf of Addie Potts.

Addie Potts' claim of ownership has been open, peaceable, exclusive and adverse from about April 2, 1949 until this suit was filed.

## OPINION

It is to be remembered that in trespass to try title suits the burden is on the

plaintiff to show prima facie title, and if he fails to do so judgment must be rendered for defendant. It is not necessary to determine the question whether defendant has title to the property. Jackson v. Griffin, Tex.Civ.App., 302 S.W.2d 266; Beken v. Hoffman, Tex.Civ.App., 196 S.W.2d 548; Reese v. Cobb, 105 Tex. 399, 150 S.W. 887; 41–A Tex.Jur. 685. The question then in this case is this: did appellants as plaintiffs in the trial court prove title in themselves under the ten year Statute of Limitations? We have concluded that this question should be answered adversely to appellants.

■ The trial court filed written conclusions of law including the following: (1) there is no showing that the possession of Ed Potts and Virgie Potts resulted from a claim of ownership hostile to that of Mrs. M. E. Brannon and her heirs; (2) contrariwise it is indicated that the possession of Ed Potts and Virgie Potts was held under an executory contract of sale; (3) Ed Potts and Virgie Potts never perfected title by limitation; (4) had they done so, such title would have been extinguished through the subsequent claim and possession of Addie Potts; (5) the fact that taxes were assessed to Ed Potts and the further fact that Ed and Virgie Potts executed a paving contract does not establish a hostile claim in view of their subsequent payments to Mrs. M. E. Brannon and J. C. Brannon; (6) lack of hostility in Ed and Virgie Potts' claim is confirmed in Ed Potts' subsequent acquiescence in Addie Potts' redemption of the property and (7) Addie Potts' claim of ownership has been adverse to appellants.

In their first seven points on appeal appellants contend that the above conclusions were error on the part of the court. We are unable to subscribe to appellants' contentions.

As we have indicated many of the facts are undisputed. Other facts, though not undisputed, have support in the evidence and the court's findings thereon are binding

on us. Addie Potts testified in substance that J. C. Brannon and his wife came to the property with a sheet showing "a whole lot of back taxes * * * and the place wasn't paid out. * * * I asked him what did you all want to do, you want me to jar loose from my money to redeem the place, they come to put us outdoors, or else go home." Ed Potts was present on this occasion. Addie Potts in her own behalf entered into a new contract with the Brannons, making the initial payment of $50 and monthly payments of $25 thereafter out of her separate funds. The testimony of Mrs. J. C. Brannon (J. C. Brannon had died about two years before the trial) though not entirely free of inconsistencies, in substance corroborates the testimony of Addie Potts.

Addie Potts further testified that shortly after the death of Ed Potts, she finished paying for the property, the final payment being in the amount of $797.77 from her separate funds. The deed dated March 30, 1949 was then executed and delivered, naming "Addie Potts, a feme sole" as grantee. She further testified that two or three days after receiving the deed she told Pearlie Potts that she was claiming exclusive ownership of the property. There is testimony from other parties, including Pearlie Potts herself, that Pearlie Potts soon thereafter communicated with a lawyer. Her brother James Potts, Sr. was also informed of Addie Potts' claim. Early in the year 1950 Pearlie Potts executed and filed in the Deed Records of Grayson County an affidavit which had been prepared by her attorney. In this affidavit Pearlie Potts asserted appellants' claim to the title to the property, the purpose being to give notice that appellants opposed Addie Potts' claim of title.

We shall not attempt to reproduce even in condensed form all the testimony bearing on the issues in this controversy. However, there is evidence to support the court's findings of fact to the effect that about a year prior to the death of Ed Potts, in March 1949, Addie Potts entered into a contract of purchase with J. C. Brannon,

and thereafter claimed exclusive ownership of the property; that Ed Potts knew of her claim; that soon after Ed Potts' death Addie Potts paid the balance due on the purchase contract, still claiming exclusive ownership; and that appellants knew of her claim soon after March 30, 1949, more than ten years before this suit was filed. These facts support the court's conclusions of law. Appellants' first seven points on appeal are overruled.

◼ In their eighth point appellants complain that appellee Addie Potts was permitted to testify over appellants' objection as to improvements made by her on the property amounting to more than $1,400. Appellants say there was no pleading to support said testimony. However, the statement of facts reveals that the court permitted appellee's attorney to dictate a trial amendment pertaining to improvements. Anyway, in view of appellants' failure to prove their title the matter becomes immaterial. Appellants' eighth point is overruled.

◼ In their ninth point appellants say that since appellee entered the property as the wife of Ed Potts in subordination to his claim of title and remained there until his death and after his death, she is estopped from attacking Ed Potts' title. We cannot agree. Ed Potts' purchase contract was forfeited. To prevent eviction Addie Potts in her own behalf then entered into a new contract with the record owners. Her claim from that time on was not subordinate to Ed Potts' claim, but superseded his claim. There is evidence that Ed Potts had knowledge of Addie's claim and consented to it. Appellants' ninth point is overruled.

Appellants' tenth to fifteenth points inclusive are to the effect that the court erred in finding that (10) there was no showing that the property was ever actually rendered by Ed Potts or that he ever paid any taxes; (11) Ed Potts and Virgie Potts entered into possession of the premises by virtue of a purchase agreement with Mrs. M. E.

Brannon; (12) after the death of Mrs. M. E. Brannon, J. C. Brannon continued to collect installment payments for several years; (13) at some undetermined time Ed Potts refused to make further payments; (14) on or about April 1949 Addie Potts was asserting a claim of title to the property as opposed to her right of possession for life as Ed Potts' surviving widow; and (15) on or prior to February 2, 1950 both James Potts, Sr. and Pearlie Potts had notice of such claim by Addie Potts. We have carefully read the entire record of the evidence in this case and are of the opinion that the court's findings are supported by the record. Appellants' points ten to fifteen inclusive are overruled.

In their sixteenth point appellants allege that it was error for the court to find that J. C. Brannon had authority from the other heirs of Mrs. M. E. Brannon to convey the entire estate of Mrs. Brannon and that he represented to Addie Potts that he was so acting.

◼ Mrs. J. C. Brannon testified that her husband told Addie Potts that he had authority to convey not only his own interest in the property, but was authorized to convey the interest of the other heirs. This was contrary to the express terms of the deed itself, which undertook to convey only the interest of J. C. Brannon. Moreover, no written power of attorney is shown whereby the other heirs authorized J. C. Brannon to execute a deed in their behalf. However, appellants failed to establish their title by ten years limitation while Addie Potts did show ten years adverse possession and title under the ten year statute of limitations. Therefore the particular findings of the court here complained about by appellants, though in error, are immaterial and harmless. The sixteenth point is overruled.

◼ In their seventeenth point appellants complain of error on part of the court in refusing appellants' request for findings of fact. The trial court did make extensive

findings of fact and conclusions of law which appear in the record. However, appellants prepared certain proposed findings of fact favorable to themselves, which proposed findings they asked the court to adopt. The court refused. Since the findings adverse to appellants found by the court (with the exception of the findings discussed under point sixteen) are supported by evidence, it was not error for the court to refuse to adopt the findings requested by appellants. The seventeenth point is overruled.

The judgment of the trial court is affirmed.