Harold J. STEIN and Eugene H. Lieck, d/b/a Mission Music & Vending Systems, Appellants,

v.

Paul MAURICIO, Appellee.

No. 16149.

Court of Civil Appeals of Texas, San Antonio.

March 28, 1979.

Rehearing Denied April 25, 1979.

Eugene H. Lieck, Pickett & Lieck, San Antonio, for appellants.

Charles L. Franz, Jr., Franz & Franz, San Antonio, for appellee.

## OPINION

MURRAY, Justice.

This suit was brought by appellants, Harold J. Stein and Eugene H. Lieck, d/b/a Mission Music and Vending Systems, against Paul Mauricio, appellee, for conversion of two juke boxes.

Appellee was the owner of a building in San Antonio, Texas, which he leased to one Robert Edwards for the purpose of operating a lounge. Appellants entered into a contract with Robert Edwards in which appellants and Edwards agreed to divide the proceeds from two juke boxes furnished by appellants for use in the lounge. On May 2, 1976, appellant, Stein, went to collect from the machines on the leased premises and found that the premises were locked and vacated. Appellee refused appellants demand for return of the machines, and on August 5, 1977, appellants filed this suit for conversion. After a trial before the court without a jury, the trial court entered judgment that appellants take nothing.

■ Appellee contends that his refusal to deliver the juke boxes to appellants was due to appellants' failure to produce evidence of ownership. Appellee argues that appellants were required to produce evidence of ownership to appellee before he can be held liable for conversion of appellants' property. We disagree. Under the facts and circumstances of this case, conversion is established as a matter of law.

■ Before considering the evidence, we will first examine some of the authorities that we believe are applicable in this situation. The wrongful detention of chattels under an assertion of right inconsistent with the owner's general dominion, particularly if the detention occurs after demand for possession, may constitute conversion. *Bub Davis Packing Co. v. ABC Rendering Co. of San Antonio*, 437 S.W.2d 634 (Tex. Civ.App.—Austin 1969, no writ). A person in possession may refuse to surrender a chattel for a reasonable length of time when he has a reasonable doubt about the claimant's right to immediate possession. This qualified refusal imposes a duty on the one in possession to make a reasonable inquiry into the right of the claimant to possession of the chattel. Restatement (Second) of Torts § 240 (1965). *Accord*, 89 C.J.S. *Trover & Conversion* §§ 51, 60 (1955). The qualified refusal must also be made in good faith. Restatement (Second) of Torts § 241 (1965). For a person in possession to rely on a qualified refusal, it is essential that the qualification be disclosed to the owner. The refusal must be stated distinctly, and all reasons for the refusal that are not mentioned at the time of refusal are waived and cannot be later raised. 18 Am. Jur.2d *Conversion* § 44 (1965); 89 C.J.S. *Trover & Conversion* § 59 (1955).

This case was tried before the court without a jury on March 20, 1978. The uncontradicted testimony of appellant, Stein, shows that he placed the two juke boxes in the establishment of Edwards five or six months prior to May 2, 1976, and visited the lounges once a week to collect the money. On May 2, 1976, he arrived at the lounge to collect the money and found that the place had been abandoned. A few days later he contacted appellee and made a demand for the two juke boxes which appellee refused. Appellee admitted that the two juke boxes were still in the store, and when questioned about Mr. Stein's demand, appellee testified as follows:

> Mr. Stein called me. I don't remember when; but, I know it was shortly after Edwards left. He called me one time. One time only. And, he said that those

two juke boxes belonged to him. He asked me if they were there; and, I said, 'Yes, they are here.' He said, 'They belong to me, and I would like to take them out.' And, I told him. 'No. As far as I am concerned, they belong to Robert Edwards, because he is the one that told me to go ahead and hold them until he came back and took care of his rents.' And I told Mr. Stein that if he wanted to pursue the matter to call my attorney, Mr. Franz; and, I believe he did, because Mr. Franz called me, and asked me about it; and I told Mr. Franz exactly what I am telling you. And, I guess that ended the case, because I never heard anything from either Mr. Stein or yourself, until a couple of months ago, when we got this letter saying that these machines were worth so much money, and they had been—et cetera, et cetera. But, nobody ever established ownership. Mr. Stein never talked to me personally. You never talked to me personally.

As far as I am concerned the machines are mine, because Robert Edwards left them there for me.

When questioned by appellants' attorney concerning appellee's conversation with Stein, appellee answered as follows:

Q. Mr. Mauricio, isn't it a fact that when you talked to Mr. Stein that you told Mr. Stein that this man owed you some rents, and that you were going to keep those machines for payment of his rent?

A. Right. Excuse me, sir. No, I don't know if I used those exact words.

Q. But, I mean, in substance?

A. I think what I said was that Edwards is supposed to come back and collect those machines, and I would only be able to return them to this man, Edwards if he brought me any money.

Q. Now, you say shortly after Edwards left Mr. Stein contacted you, and you had this discussion with him, and you told him to talk to your attorney?

A. Right.

\* \* \* \* \* \*

Q. Prior to sending you that letter—'76—prior to sending you that letter, Mr. Stein and I had several discussions with your attorney; and your attorney advised you to turn those machines over to us; and you refused? Isn't that a fact?

A. I think so, yes. In 1976, you said?

Q. Yes, sir.

A. No, not in 1976. I talked to you—the first time I heard about you, Mr. Lieck, was in 1977, two months ago. That's the first I have heard about you.

Under the facts as disclosed by the record in this case, there was a conversion of the two juke boxes by appellee in May 1976. It is clear that appellee's refusal of Stein's demand was not a qualified refusal, but was an absolute denial of appellants' right to the return of the two juke boxes. Even after his own attorney advised appellee to return the property to appellants, appellee refused to do so until Edwards paid his back rent.

The judgment of the trial court is reversed and the cause is remanded to that court for a determination of appellants' damages only.